**STATE of Maine**

v.

**Daniel HAYES, William Train, and Scott Kimball.**

Supreme Judicial Court of Maine.

Argued Jan. 24, 1992.

Decided Feb. 24, 1992.

Michael Cantara, Dist. Atty., David Gregory (orally), Alfred, for the state.

Edward F. Bradley, Jr. (orally), Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

WATHEN, Justice.

Defendants join in an appeal from judgments of conviction in the Superior Court (York County, *Lipez, J. & Fritzsche, J.*), entered upon their conditional guilty pleas, for possessing lobsters on a boat rigged for otter trawling in violation of 12 M.R.S.A. § 6952 (Supp.1991). Defendants maintain that the State's enforcement of this statute beyond Maine's three-mile maritime boundary is preempted by federal law, and in addition violates the privileges and immunities clause, the equal protection clause, and the interstate commerce clause of the United States Constitution. We find that extraterritorial enforcement of Maine's lobster laws against vessels registered under Maine law is not preempted by federal law or prohibited by the Constitution, and affirm the judgments.

Defendants Scott Kimball and Daniel Hayes are crew members and defendant William Train is owner and captain of the "Deborah Ann," a 116-ton trawler based in Portland (home port East Boothbay) and authorized to fish in federal waters. The "Deborah Ann" regularly fishes in the federal "exclusive economic zone" (EEZ), which extends 197 miles beyond Maine's marine boundary. *See* 16 U.S.C. § 1802(6) (Supp.1991). Defendants were arrested while on board the "Deborah Ann" within this zone, and charged with possession of lobsters in violation of 12 M.R.S.A. § 6952(1), which provides:

It shall be unlawful to fish for or take lobsters by use of an otter or beam trawl, a scallop drag or trawl, seine or net or to have in possession any lobsters, regardless of their source, on board any boat rigged for otter or beam trawling, scallop dragging or trawling, seining or netting.

Defendants moved to dismiss on the ground that enforcement of the above statute within the EEZ was preempted by federal law. The District Court (York, *Gaulin, J.*) denied their motion and following conditional guilty pleas, the matter is before us on appeal.

■ In *State v. Lauriat*, 561 A.2d 496 (Me.1989), we held that the Magnuson Fishery Conservation and Management Act, 16 U.S.C. § 1801 *et seq.*, which grants exclusive authority to the federal government over fishery management activities within the EEZ, preempted the State's enforcement of 12 M.R.S.A. § 6952 in that zone where, *inter alia*, the vessel was not registered in Maine. Although with passage of the Magnuson Act Congress assumed exclusive authority of fishery management within the EEZ, *see* 16 U.S.C. § 1812 (1985) (now 16 U.S.C. § 1811 (Supp.1991)), it provided one exception preserving to the states the authority to regulate state-registered vessels within that zone. *See* 16 U.S.C. § 1856(a)(3) ("[A] State may not directly or indirectly regulate any fishing vessel outside its boundaries, unless the vessel is registered under the law of that State."). The State argues that although the "Deborah Ann" is not registered under the general provision for watercraft registrations, 12 M.R.S.A. § 7794 (Supp.1991), it is nonetheless registered in Maine by virtue of 12 M.R.S.A. § 6001(36) (1981), which includes in the definition of "registered vessel" a vessel owned and operated by a person licensed under 12 M.R.S.A. §§ 6001–6955. Defendant William Train holds a Maine commercial fishing license, *see* 12 M.R.S.A. § 6501 (1981), and a Maine lobster license. *See* 12 M.R.S.A. § 6421 (Supp.1991).

Defendants contend that in *Lauriat* we rejected any expansion of the definition of a registered vessel to include a vessel operated by a person holding a Maine fishing

license. In *Lauriat*, however, counsel for the State conceded that the vessel was not registered in Maine and neglected to call 12 M.R.S.A. § 6001(36) to our attention. *Lauriat's* holding is inapplicable because the Legislature has defined a registered vessel as one owned or operated by a licensee and the validity of that statute is not challenged. Therefore, for purposes of the federal act, the "Deborah Ann" is "registered under the law of" Maine within the meaning of 16 U.S.C. § 1856(a)(3).

■ Not only is state enforcement of its lobster laws against its own vessels authorized by the Magnuson Act, but such enforcement presents no obstacle to fulfillment of the objectives of the federal lobster management plan. *See State v. Allard*, 313 A.2d 439, 443 (Me.1973). The federal plan, set forth in 50 C.F.R. Pt. 649, does not contain any prohibition against possession of lobster on a boat rigged for trawling. Maine's law is therefore more restrictive than the federal law on this point. The federal regulations authorize the enforcement of more restrictive state laws and therefore there is no conflict. *See* 50 C.F.R. § 649.3(b) ("Nothing in these regulations will supersede more restrictive State or local lobster management measures.") Also, the federal regulations specifically authorize state regulation of the "gear" used to fish under a federal permit in the EEZ. *See* 50 C.F.R. § 649.4(a)(3) (federal permit holders must agree that vessels will comply with fishing, catch, and gear requirements of federal regulations and, in addition, "[a]ll such fishing, catch and gear will remain subject to any applicable state and local requirements."). This express recognition of concurrent state authority defeats the argument that state enforcement would thwart the objectives of the federal lobster management plan.

Because the Magnuson Act does not explicitly or implicitly preempt a state's regulation of its own vessels (but in fact specifically authorizes such regulation), and because enforcement of 12 M.R.S.A. § 6952 against Maine-registered vessels within the EEZ does not conflict with the lobster management plan under the Act, defendants' preemption argument fails.

■ Defendants' additional constitutional arguments present little difficulty. We find no merit in defendants' privileges and immunities argument, as this constitutional protection applies only to citizens of another state against discriminatory treatment in this state, and does not limit Maine's police power over its own citizens. *See Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948) ("[The clause] was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."); *State v. Cohen*, 133 Me. 293, 299, 177 A. 403 (1935) ("The intent [of the privileges and immunities clause] was that the citizen of one state should not be an alien in another."). Similarly, the State does not deny equal protection to its citizens by enacting a law that is unenforceable against nonresidents. The unequal treatment in such a case results from limitations on sovereignty rather than from the creation of suspect classifications. Finally, defendants' commerce clause argument also fails. When Congress expressly authorizes state action, there is no commerce clause violation. *Northeast Bancorp, Inc. v. Board of Governors*, 472 U.S. 159, 174, 105 S.Ct. 2545, 2553, 86 L.Ed.2d 112 (1985) ("When Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause."). Here, Congress has authorized enforcement of more restrictive state fishing laws within the EEZ. *See* 50 C.F.R. §§ 649.3(b) & 649.4(a)(3).

The entry is:

Judgments affirmed.

All concurring.