Argued and submitted May 21, 2009, affirmed June 23, petition for review denied
December 9, 2010 (349 Or 370)

### Dale MARBLE,
*Petitioner,*

*v.*

### DEPARTMENT OF FISH AND WILDLIFE,
*Respondent.*

Department of Fish and Wildlife
130645; A134932

234 P3d 1062

Robert F. Kehoe argued the cause and filed the briefs for petitioner.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

### ARMSTRONG, J.

The Commercial Fishery Permit Board of the Oregon Department of Fish and Wildlife issued an amended final order in a contested case proceeding that upheld a 200 crab-pot limit for petitioner's Oregon Dungeness crab vessel permit for the Fishing Vessel (F/V) Adventurous. The board based its decision on its interpretation of OAR 635-006-1015(1)(g)(E) (June 20, 2006),[1] which, according to the board, requires the crab-pot limit for a vessel to be based on the documented crab landings by the vessel that held the Oregon crab vessel permit between 1995 and 2001, rather than landings made during that time by the vessel to which the permit is currently assigned, if different. Petitioner seeks judicial review of that order, arguing (1) that the board's construction of the rule is erroneous and (2) that the rule, as applied to petitioner, violates 16 USC section 1856 note (Dungeness Crab Act), which prohibits Oregon from discriminating against vessels licensed by other states that are engaged in the Dungeness crab fishery in the exclusive economic zone (EEZ) off the Oregon coast.[2] We conclude that the board did not err in interpreting the rule and that the rule does not violate the Dungeness Crab Act. We therefore affirm the board's order.

As acknowledged by the parties, the material facts in this case are not disputed, and, therefore, the board's unchallenged findings in its revised final order establish the facts for purposes of judicial review. *Meltebeke v. Bureau*

---

[1] Unless otherwise indicated, all references to OAR 635-006-1015 are to that version of the rule, which was adopted at the time that the department assigned the 200 crab pot limit to petitioner's permit in July 2006.

[2] In 1983, President Reagan established by proclamation a 200-mile exclusive economic zone, generally extending 200 nautical miles into the ocean from the United States coastline, over which the United States has sovereign rights and jurisdiction. Proclamation No. 5030, 48 Fed Reg 10,605 (Mar 14, 1983). Within the EEZ, coastal states, with some exceptions not applicable in this case, maintain jurisdiction over the waters and underlying submerged land extending three miles from their coastlines. *See* 43 USC § 1312 ("The seaward boundary of each * * * coastal State is hereby approved and confirmed as a line three geographical miles distant from its coast line * * *."); 16 USC § 1802(11) ("For purposes of applying [the Magnuson-Stevens Fishery Conservation and Management Act], the inner boundary of [the EEZ] is a line coterminous with the seaward boundary of each of the coastal States."); *see also* OAR 635-004-0020(6) (" 'Exclusive economic zone' means the zone between 3-200 nautical miles offshore of the United States.").

*of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995). We supplement those facts, as relevant to our decision, with uncontroverted information from the contested case record.

In order to legally operate a vessel in the Oregon commercial ocean Dungeness crab fishery, an individual must obtain "a vessel permit issued pursuant to ORS 508.931 or 508.941." ORS 508.926(1). Since 1995, Oregon has limited the entry of vessels into the commercial ocean Dungeness crab fishery by restricting eligibility for permits to those Oregon vessels that caught a specified amount of crab at a specified frequency during the late 1980s and early 1990s and lawfully landed that crab into Oregon ports. ORS 508.931.[3] Subject to certain restrictions, Oregon Dungeness crab vessel permits may be transferred between vessels. ORS 508.936(1); OAR 635-006-1095.

In 2006, the Oregon Fish and Wildlife Commission adopted by rule a pot-limit system for Oregon's commercial Dungeness crab fishery. OAR 635-006-1015(1)(g)(E). Under that system, crab vessel permit holders were assigned a crab-pot limit of 200, 300, or 500 pots depending on the total weight of documented landings of crab into Oregon, Washington, or California by the permit holders during the six commercial crab-fishing seasons that were held between December 1, 1995, and August 14, 2001. The pot limit for a vessel establishes the maximum number of crab pots that the vessel can use to fish for crab. As discussed more fully below, permit holders whose total landings during the qualifying period fell below a minimum weight limit were assigned a 200-pot limit, permit holders whose landings fell within a middle range of weight were assigned a 300-pot limit, and those whose landings exceeded the weight prescribed for the middle range were assigned a 500-pot limit.

During the qualifying period, petitioner fished for Dungeness crab under a vessel permit issued by the State of Washington and assigned to the F/V Adventurous. The majority of that fishing occurred in the EEZ off the coasts of

---

[3] ORS 508.941 provides exceptions to the eligibility requirements established by ORS 508.931; however, they are not implicated by this case. *See* ORS 508.941(2), (3)

Oregon and Washington, beyond the three-mile state territorial limits. Petitioner landed the Dungeness crab that he caught during the qualifying period into Westport, Washington, under his Washington permit. Those landings exceeded the minimum weight requirements for a 500-pot limit under the Oregon rule.

During the commercial crab seasons between December 1, 1995 and August 14, 2001, Oregon Dungeness crab vessel permit 96311 was assigned to the F/V Cathan. F/V Cathan's Dungeness crab landings under permit 96311 for those seasons qualified the vessel for only a 200-pot limit under the Oregon rule. In February 2004, the F/V Cathan was destroyed. Later that year, in response to the pending implementation of the Tri State E-200 Agreement, discussed below, petitioner sought to purchase an Oregon crab vessel permit and learned that permit 96311 was for sale. Petitioner purchased permit 96311, which was then transferred to the F/V Adventurous in November 2004.

Since at least the late 1990s, crab can be landed in Washington only if caught under a Washington crab vessel permit, subject to a limited exception, and, similarly, crab can be landed in Oregon only under an Oregon crab vessel permit. *Former* RCW 75.30.360 (1997), *renumbered as* RCW 77.70.290; OAR 635-005-0047. A Washington or Oregon crab vessel permit is required to fish within the three-mile state territorial waters adjacent to the state issuing the permit. RCW 77.70.280(1); OAR 635-006-1015(1)(g)(A). Additionally, before implementation of the Tri State E-200 Agreement, crab vessel permit holders of either state could lawfully fish for Dungeness crab within the federal waters of the EEZ extending from three to 200 miles off the United States coast. During the qualifying period, permit holders were not prohibited from holding Dungeness crab vessel permits from more than one state, and they are still allowed to do so.

Since January 1, 2007, the Tri State E-200 Agreement has been in effect, implementing an agreement among Washington, Oregon, and California to limit the geographic scope of fishing under each state's Dungeness crab vessel permits. As a result of the agreement, Washington Dungeness

crab vessel permits are valid only north of the Washington-Oregon border in the Pacific Ocean, extending out 200 miles to the EEZ boundary. RCW 77.70.370.[4] In turn, Oregon Dungeness crab vessel permits are valid only south of the Washington-Oregon border and north of the California-Oregon border in the Pacific Ocean, extending out 200 miles to the EEZ boundary. OAR 635-005-0042.[5] Finally, California "Dungeness crab vessel permits are valid only in state waters and in the Pacific Ocean in federal waters south of the border with Oregon." Cal Fish & Game Code § 8280.9. Consequently, Oregon Dungeness crab vessel permits are not valid to fish off the coast of Washington, and Washington Dungeness crab vessel permits are not valid off the Oregon coast.

In July 2006, the department issued a letter implementing OAR 635-006-1015(1)(g)(E) and assigning a 200-pot limit to petitioner's Dungeness crab vessel permit 96311 for F/V Adventurous. The department notified petitioner that its "records indicate that your limited entry permit #96311 on F/V ADVENTUROUS Documentation #609599, made landings that will put you in a tier of 200 pots." Petitioner requested a contested case hearing to challenge his crab-pot allocation. The hearing was held in November 2006 before an administrative law judge (ALJ) assigned by the Office of Administrative Hearings. Later that month, the ALJ issued

---

[4] RCW 77.70.370 provides:

"(1) A Dungeness crab—coastal fishery licensee shall not take Dungeness crab in the waters of the exclusive economic zone westward of the states of Oregon or California and land crab taken in those waters into Washington state unless the licensee also holds the licenses, permits, or endorsements, required by Oregon or California to land crab into Oregon or California, respectively.

"(2) This section becomes effective only upon reciprocal legislation being enacted by *both* the states of Oregon and California. For purposes of this section, 'exclusive economic zone' means that zone defined in the federal fishery conservation and management act (16 U.S.C. Sec. 1802) as of January 1, 1995, or as of a subsequent date adopted by rule of the director."

(Emphasis added.) RCW 77.70.370 took effect on January 1, 2007, when the reciprocal Dungeness crab-fishing restrictions that Oregon and California adopted to implement the Tri State E-200 Agreement took effect.

[5] Specifically, the rule provides that "Oregon Dungeness crab permits are valid only in Oregon state waters and the Pacific Ocean in federal waters south of an east-west line extending westward at 46° 15' 00" N. Latitude (Oregon/Washington border) and north of an east-west line at 42° 00' 00" N. Latitude (Oregon/California border)." OAR 635-005-0042.

a proposed order, followed by an amended proposed order, that concluded that the department had correctly determined petitioner's crab-pot limit to be 200. In January 2007, the board issued a final order upholding the department's crab-pot allocation. Petitioner timely sought judicial review of the board's order. In November 2007, the board withdrew its final order to reconsider it in light of arguments about the Dungeness Crab Act that petitioner had raised on judicial review. In January 2008, the board issued an amended final order, again upholding the department's assignment of a 200-pot limit for petitioner's permit. Subsequently, petitioner gave timely notice of his intention to proceed with judicial review of the amended final order.

OAR 635-006-1015(1)(g) sets forth the requirement for an Oregon commercial Dungeness crab vessel permit and the allocation of crab-pot limits as follows:

"(A)   Except as provided under the reciprocity provisions of ORS 508.941(3) or section (F) below, it is unlawful for an individual to operate a vessel in the ocean Dungeness crab fishery without first obtaining a *vessel permit* issued pursuant to ORS 508.931 or 508.941. * * *.

"* * * * *

"(E)   Effective December 1, 2006, the number of crab pots allocated to a *permit* required under section (A) above will be determined as follows:

"(i)   The allocation will be based on documented landings of Ocean Dungeness crab into Oregon, Washington (excluding landings from the Puget Sound Fishery), or California, using valid Oregon fish receiving tickets, or equivalent valid documents from the states of Washington or California, from December 1, 1995 through August 14, 2001;

"(ii)   The crab pot allocation will be the highest number of pots the *vessel* qualifies for during the six qualifying seasons, December 1 of one year through September 15 of the next year (except through August 14, in 2001);

"(iii)   A crab pot allocation of 200 shall be assigned to a *permit with landings* less than 15,020 pounds in the 1995 to 1996 season, and 4,010 pounds in the 1996 to 1997 season, and 5,170 pounds in the 1997 to 1998 season, and 7,083

pounds in the 1998 to 1999 season, and 13,160 pounds in the 1999 to 2000 season, and 8,940 pounds in the 2000 to 2001 season;

"(iv)   A crab pot allocation of 300 shall be assigned to a *permit with minimum landings* of 15,020 pounds in the 1995 to 1996 season, or 4,010 pounds in the 1996 to 1997 season, or 5,170 pounds in the 1997 to 1998 season, or 7,083 pounds in the 1998 to 1999 season, or 13,160 pounds in the 1999 to 2000 season, or 8,940 pounds in the 2000 to 2001 season; and

"(v)   A crab pot allocation of 500 shall be assigned to a *permit with minimum landings* of 89,020 pounds in the 1995 to 1996 season, or 35,180 pounds in the 1996 to 1997 season, or 39,350 pounds in the 1997 to 1998 season, or 49,450 pounds in the 1998 to 1999 season, or 78,400 pounds in the 1999 to 2000 season, or 37,030 pounds in the 2000 to 2001 season.

"(F)   If a vessel does not have an Oregon crab permit required under section (A) above, but does have a California Dungeness Crab permit valid to fish off Oregon, the vessel may fish for Dungeness crab outside of three nautical miles off Oregon provided:

"(i)   A request for an allocation is submitted as specified by Oregon Department of Fish and Wildlife License Services, Salem;

"(ii)   A crab pot allocation shall be assigned to their vessel as described in (E) above; and

"(iii)   All crab pots and buoys must be marked as specified by OAR 635-005-0055(6)."[6]

(Emphasis added.)

On judicial review, petitioner presents two arguments challenging the legality of the board's assignment of a 200-pot limit to Dungeness crab vessel permit 96311. We begin by addressing petitioner's first argument, which is that, by failing to consider crab landings made by petitioner's vessel in Washington between December 1, 1995 and August

---

[6] As of October 25, 2007, subsection (1)(g)(F) and all references to it in the rule have been deleted from OAR 635-006-1015(1)(g).

14, 2001, under his Washington permit, the board erroneously interpreted OAR 635-006-1015(1)(g) to require that "all crab landings made during the qualifying period be made by a vessel with an Oregon permit." The department responds that the board did not erroneously interpret OAR 635-006-1015(1)(g)(E) because the text of the rule, in context, confirms that the allocation of crab pots is specific to the permit and "the landings made by the vessel holding the Oregon permit during the six qualifying seasons."

Under ORS 183.482(8)(a), we review the board's construction of OAR 635-006-1015(1)(g)(E) for legal error. The board is a statutorily created body that acts in a reviewing capacity and is responsible for, among other things, determining whether the department correctly allocated crab-pot limits to ocean Dungeness crab vessel permits.[7] Although the board is responsible for reviewing crab-pot allocations made by the department under OAR 635-006-1015, the rule itself was not promulgated by the board, but, rather, by the Oregon Fish and Wildlife Commission.[8] Consequently, our task is to determine the meaning of the commission's rule. *See, e.g., Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997).

■ By its terms, subsection (1)(g)(E) of the rule establishes that the allocation of crab pots is specific to the Dungeness crab vessel permit receiving the allocation. Subsection (1)(g)(E) begins by explaining that a designated number of crab pots (that is, 200, 300, or 500 pots) will be "allocated *to a permit* required under section (A)." (Emphasis added.) Subsections (1)(g)(E)(iii) through (v) provide that the allocation designation "shall be assigned *to a permit with landings*" of less than a specified number of pounds or "assigned *to a permit with minimum landings*" of a specified number of pounds during the qualifying seasons. (Emphasis added.) Under subsection (1)(g)(E)(i), those landings could

---

[7] ORS 508.755(1) "established within the State Department of Fish and Wildlife the Commercial Fishery Permit Board." If certain conditions are met, the board is authorized to "adjust the number of crab pots allocated to a permit." OAR 635-006-1065(g)(A).

[8] The legislature created the Oregon Fish and Wildlife Commission to implement Oregon's wildlife policies and programs, and authorized it to adopt rules and standards to do that. ORS 496.090; ORS 496.138.

have occurred in Oregon, Washington, or California. Finally, the rule provides that the Dungeness crab vessel permit will be assigned the highest pot allocation that "the vessel qualifies for during the six qualifying seasons." OAR 635-006-1015(1)(g)(E)(ii).

The board concluded that subsection (1)(g)(E) requires "that the landings used to determine the pot limits for a permit are the landings made by the vessel holding that permit at the time of the landings rather than landings made by the vessel to which the permit is currently attached." Petitioner asserts that that interpretation is contrary to the text of the rule because subsections (E)(i) and (ii) of the rule, as petitioner interprets them, require the crab-pot allocation to be based on the *"vessel's* crab landings made into Oregon, *Washington,* or California from December 1, 1995 through August 14, 2001." (Emphasis in original; typeface modified.) Hence, according to petitioner, the crab-pot allocation for permit 96311 should be based on the landings made by the F/V Adventurous—that is, the vessel that now holds permit 96311—in Washington under its Washington permit during the qualifying period because "there is nothing in OAR 635-006-1015(1)(g), or any other rule, stating that a vessel's qualifying landings must be tied to the Oregon permit during the qualifying period."

Thus, the crux of the parties' interpretive dispute is over how the term "vessel" is used in the rule—that is, whether it refers to the vessel that held the permit at the time of the crab-pot allocation *or* the vessel that held the permit during the qualifying period. Petitioner notes that subsection (1)(g)(E)(ii) of the rule states that "[t]he crab pot allocation will be the highest number of pots the *vessel* qualifies for during the six qualifying seasons." (Emphasis added.) Read in isolation, it is plausible to understand that provision to mean, as petitioner contends, that the vessel to which the rule refers is the one that now holds the permit and, thus, that the crab-pot allocation must count landings made by that vessel during the qualifying period. However, when considered in context with the other provisions of the rule, it becomes apparent that the board correctly concluded that the vessel to which the rule refers is the one that held the permit during the qualifying period.

As discussed, the rule's crab-pot allocation methodology focuses on the volume of crab landings associated with an Oregon permit during the qualifying period. For example, subsection (1)(g)(E) of the rule makes clear that "crab pots [are] allocated to a *permit*." (Emphasis added.) Furthermore, and importantly, subsections (1)(g)(E)(iii) to (v) direct that the crab-pot allocation "shall be assigned to a *permit with landings*" based on the volume of those landings *during the qualifying period.* (Emphasis added.) When the rule refers to a "permit with landings" of a specified amount during the qualifying period, that necessarily refers to the landings associated with the permit receiving the allocation—in this case, vessel permit 96311—during that period. Those landings, in turn, are the landings made by the vessel that held the permit during that time.

Consequently, when read in context with subsections (1)(g)(E)(iii) to (v), the reference to "vessel" in subsection (1)(g)(E)(ii) cannot be understood to refer to a vessel such as the F/V Adventurous that obtained a permit *after* the qualifying period, because the landings made by such a vessel would not be landings associated with the permit *during* the qualifying period. Rather, as the board correctly concluded, subsection (1)(g)(E)(ii) refers to the vessel that held the permit during the qualifying period. Thus understood, each of subsection (1)(g)(E)'s provisions are given effect and interact in a consistent manner, in contrast to petitioner's construction, which fails to recognize the import of subsections (1)(g)(E)(iii) to (v).

Moreover, the board's interpretation of the rule is consistent with the statutes on which the rule is based. To protect the economic well-being of Oregon's crab-fishing community, Oregon has limited the number of vessel permits, and the fishing permitted under them, on the basis of the historic crab-fishing activity of those who have participated in the Oregon fishery. ORS 508.921; ORS 508.926; ORS 508.931. Specifically, through ORS 508.921, the legislature directed the Fish and Wildlife Commission to establish by rule a system to restrict participation in the Oregon ocean Dungeness crab fishery

"in order to promote the economic well-being of the Oregon ocean Dungeness crab industry and the coastal communities relying on the harvest, [and] to protect the livelihood of participants in the Oregon ocean Dungeness crab fishery who have historically and continuously participated in the ocean Dungeness crab fishery and to prevent a concentration of fishing effort[.]"

When OAR 635-006-1015(1)(g)(E) is correctly understood to consider only landings made by the vessel holding the Oregon permit during the qualifying period, the crab-pot rule operates consistently with that statutory framework. In particular, the rule correlates the permit's crab-pot limit to the historic volume of crab fishing by the person who was a member of the Oregon crab-fishing community during the qualifying period. Thus, the board's interpretation of OAR 635-006-1015(1)(g)(E) is consistent with the legislature's directive to the Oregon Fish and Wildlife Commission to preserve Oregon's ocean Dungeness crab fishery and the Oregon industries dependent on it.

In contrast, petitioner's interpretation conflicts with those statutory directives because it decouples the permit from the vessel that held the permit during the qualifying period and ceases to manage the volume of crab fishing based on historic levels of participation in the *Oregon* Dungeness crab fishery. For example, under petitioner's construction of OAR 635-006-1015(1)(g)(E), if a Washington or California vessel with a high volume of crab landings under *those* states' permits during the qualifying period later purchased a permit from an Oregon vessel that had a low volume of landings, then the resulting crab-pot allocation for the newly permitted vessel would exceed the historic level of work and ecological footprint of the Oregon vessel that had held the permit during the qualifying period. Conversely, petitioner's interpretation would also mean that the owner of a vessel built *after* the qualifying period who obtained a permit from an Oregon vessel that had a high volume of landings during the qualifying period would receive the lowest possible crab-pot limit because the new vessel would have had *no* landings to report for the qualifying period. In each example, the crab-pot limit assigned to the permit would not correspond to the volume of

fishing that had occurred under the permit during the qualifying period. Hence, as those examples illustrate, petitioner's interpretation of the rule is inconsistent with the statutes that govern the management of Oregon's Dungeness crab fishery, whereas the board's construction is consistent with those statutes.

Furthermore, and contrary to petitioner's assertion, the board's construction of the rule does allow Washington landings to count toward the vessel permit's pot limit as required by subsection (1)(g)(E)(i). Under the board's interpretation, landings made in Washington count toward an Oregon permit's crab-pot allocation, provided that they were made by the vessel that held the Oregon permit during the qualifying period. In other words, the Washington landings could be included if the vessel had both Oregon and Washington Dungeness crab permits during the qualifying period, and nothing prevented a vessel owner from having both permits. Thus, the board's interpretation of the rule captures the total volume of Dungeness crab fishing performed by the *Oregon* permit holder *during the qualifying period*, even if that fishing included landings elsewhere.

Accordingly, in light of the rule's text and context, the board correctly interpreted OAR 635-006-1015(1)(g)(E) to require that the landings used to determine the pot limit for a permit are the landings made by the vessel holding the permit during the qualifying period.

We turn to petitioner's second argument. Petitioner asserts that, as applied to him, the rule "violates federal law prohibiting Oregon from discriminating against vessels licensed by other states operating in the Dungeness crab fishery in the EEZ, and, therefore, is unconstitutional under the Supremacy Clause of the United States Constitution, Article VI, clause 2." To resolve that issue, it is helpful to trace the development of the relevant federal law.

In 1976, Congress enacted a statutory regime—under what is now titled the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act), 16 USC sections 1801 to 1883—designed "to conserve and manage the fishery resources found off the coasts of the United States." 16 USC § 1801(b)(1). To achieve those goals,

the United States claimed "sovereign rights and *exclusive* fishery management authority over all fish, and all Continental Shelf fishery resources, within the exclusive economic zone."[9] *Id.* § 1811(a) (emphasis added).

Although the Magnuson-Stevens Act broadly asserts federal jurisdiction over fishery resources, it also reserves state authority over those resources in several ways. Specifically, 16 USC section 1856 provides, in relevant part, for state jurisdiction over fishery resources as follows:

"(a)  In general

"(1)  Except as provided in subsection (b) of this section, *nothing in this chapter shall be construed as extending or diminishing the jurisdiction or authority of any State within its boundaries.*

"(2)  For the purposes of this chapter, except as provided in subsection (b) of this section, *the jurisdiction and authority of a State shall extend—*

"(A)  *to any pocket of waters that is adjacent to the State and totally enclosed by lines delimiting the territorial sea of the United States * * *;*

"* * * * *

"(3)  A State *may* regulate a fishing vessel *outside the boundaries of the State* in the following circumstances:

"(A)  *The fishing vessel is registered under the law of that State, and* (i) there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating; or (ii) the State's laws and regulations are consistent with the fishery management plan and applicable Federal fishing regulations for the fishery in which the vessel is operating."[10]

(Emphasis added.) Thus, under the Magnuson-Stevens Act, Oregon may regulate Dungeness crab fishing by any vessel, regardless of its registry or origin, within its own territorial

---

[9] The Magnuson-Stevens Act defines "Continental Shelf fishery resources" to include Dungeness crab. 16 USC § 1802(7).

[10] A "fishery management plan" (FMP) has never been created for the Pacific Ocean Dungeness crab fishery. Consequently, those provisions of 16 USC section 1856 applicable to an FMP, including subsection 1856(b), are not implicated by this case.

waters, and may additionally regulate fishing by Oregon-registered vessels in the EEZ outside of state territorial waters.[11] *Accord State v. Hayes*, 603 A2d 869, 870-71 (Me 1992) (noting that Magnuson-Stevens Act authorized Maine to enforce its lobster-fishing laws in the EEZ against Maine-registered vessels); *Livings v. Davis*, 465 So 2d 507, 508-09 (Fla 1985) ("[T]he [Magnuson-Stevens Act] makes no attempt to preempt the field, but in fact recognizes continued state jurisdiction over vessels registered under the laws of the various states.").

However, before 1996, the Magnuson-Stevens Act left the states of Oregon, Washington, and California "limited in their ability to enforce regulations against vessels registered under the laws of other States." HR Rep No 105-674, 105th Cong, 2d Sess (1998), 2. Thus, although all three states had enacted laws that limited entry into the Dungeness crab fishery and that prohibited vessels that did not have crab vessel permits from landing crab in their respective states, they were unable to regulate fishing by out-of-state vessels in adjacent EEZ waters. Recognizing that confusing management regime, Congress enacted the Dungeness Crab Act, "section 112(d) of Public Law 104-297 (16 U.S.C. 1856 note) in 1996, which provided limited interim authority for the three States to enforce certain State regulations against all vessels operating in the exclusive economic zone and fishing for Dungeness crab." HR Rep No 105-674, 105th Cong, 2d Sess (1998), 3. The statute has since been reauthorized and amended.

The Dungeness Crab Act provides, in relevant part:

"(a) In General. Subject to the provisions of this section and *notwithstanding section 306(a) of the Magnuson-Stevens Fishery Conservation and Management Act* (16 U.S.C. 1856(a)), each of the States of Washington, Oregon, and California *may* adopt and enforce State laws and regulations governing fishing and processing *in the exclusive*

---

[11] Under ORS 508.265, the issuance of a license to any boat for commercial fishing in Oregon "constitute[s] registration of such vessel under the laws of this state for the purposes of section 306(a) of the Fishery Conservation and Management Act of 1976 (Act of April 13, 1976, 90 Stat. 331)." The Dungeness crab vessel permit required by ORS 508.926(1) "is in addition to and not in lieu of the boat license required by ORS 508.260." ORS 508.926(3).

*economic zone adjacent to that State* in any Dungeness crab (Cancer magister) fishery for which there is no fishery management plan in effect under that Act.

"(b) REQUIREMENTS FOR STATE MANAGEMENT. Any law or regulation adopted by a State under this section for a Dungeness crab fishery—

"(1) except as provided in paragraph (2), *shall apply* equally to vessels engaged in the fishery in the exclusive economic zone and vessels engaged in the fishery in the waters of the State, and *without regard to the State that issued the permit under which a vessel is operating*;

"* * * * *

"(c) LIMITATION ON ENFORCEMENT OF STATE LIMITED ACCESS SYSTEMS. Any law of the State of Washington, Oregon, or California that establishes or implements a limited access system for a Dungeness crab fishery may not be enforced against a vessel that is *otherwise legally fishing* in the exclusive economic zone adjacent to that State *and that is not registered under the laws of that State*, except a law regulating landings.

"(d) STATE PERMIT OR TREATY RIGHT REQUIRED. No vessel may harvest or process Dungeness crab in the exclusive economic zone adjacent to the State of Washington, Oregon, or California, except as authorized by a permit issued by any of those States or pursuant to any tribal treaty rights to Dungeness crab pursuant to the decision in United States v. Washington, D.C. No. CV-70-09213.

"(e) STATE AUTHORITY OTHERWISE PRESERVED. Except as expressly provided in this section, nothing in this section reduces the authority of any State under the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. 1801 et seq.) to regulate fishing, fish processing, or landing of fish."

(Uppercase in original; emphasis added.)

The Dungeness Crab Act thus gives the three states authority, beyond that granted by 16 USC section 1856(a) over the states' own registered vessels, to regulate fishing for Dungeness crab by out-of-state vessels in the EEZ adjacent to the regulating state. *Id.* § 1856 note (a). However, that grant

of authority is subject to certain limitations. Any state regulation must apply equally in both state territorial waters and the adjacent EEZ, and without regard to the state permit under which a vessel is operating. *Id.* § 1856 note (b)(1). Furthermore, a vessel is allowed to fish for crab in the EEZ adjacent to the three states only if it is authorized to do so under a permit issued by one of those states or pursuant to tribal treaty rights. *Id.* § 1856 note (d). Finally, the Dungeness Crab Act prevents the three states from subjecting out-of-state vessels to their own limited-entry permit systems, except for laws regulating landings, if the out-of-state vessel is (1) legally fishing in the EEZ adjacent to the regulating state, and (2) not also registered in the regulating state. *Id.* § 1856 note (c).

Petitioner argues that the department's exclusion of landings made by the F/V Adventurous into Washington for purposes of determining the crab-pot limit for Oregon Dungeness crab vessel permit 96311 conflicts with subsection (b)(1) of the Dungeness Crab Act, and, therefore, is "without effect" under the Supremacy Clause. Specifically, petitioner contends that the department has not applied OAR 635-006-1015(1)(g)(E) "without regard to the State that issued the permit under which a vessel is operating," 16 USC § 1856 note (b)(1), because the board's interpretation "requires that a vessel have an Oregon permit at the time the Washington landings were made."

The department counters that OAR 635-006-1015(1)(g)(E) "does not purport to regulate vessels that are permitted by California or Washington" and, thus, was not adopted under the authority of the Dungeness Crab Act. The department asserts that, instead, the commission adopted the rule pursuant to the authority granted to the commission under ORS 508.921 and ORS 508.926(1) to regulate the Oregon Dungeness crab fishery. Specifically, the department echoes the board's position in the amended final order:

"The state chose not to rely on [the Dungeness Crab Act's] permissive authority because[,] if it had relied on this federal authority, it would have been required to allow all out of state vessels to fish for crab in state territorial waters as well as outside the three mile limit. * * *. To avoid permitting vessels from other states to operate within Oregon's

territorial waters, the state declined the offered authority to regulate all vessels outside of the state territorial waters, and instead relies on its own authority only, as have each of the other states that could exercise this authority."

Hence, a threshold question that divides the parties is whether OAR 635-006-1015(1)(g) depends on the authority granted by the Dungeness Crab Act to regulate out-of-state vessels operating in the EEZ adjacent to Oregon. However, we need not resolve that question because, even assuming that the Dungeness Crab Act's requirements apply to OAR 635-006-1015(1)(g)(E), we conclude that the rule does not violate the federal statute.

As noted, 16 USC section 1856 note (b)(1) provides that any law or regulation adopted under the authority of the Dungeness Crab Act to govern fishing by out-of-state vessels in the EEZ adjacent to that state "shall apply equally to vessels engaged in the fishery in the exclusive economic zone and vessels engaged in the fishery in the waters of the State, and *without regard to the State that issued the permit under which a vessel is operating.*" (Emphasis added.) According to petitioner, OAR 635-006-1015(1)(g)(E) impermissibly discriminates against his vessel by failing to count the landings made under his Washington permit during the qualifying period, which included crab caught in the EEZ adjacent to Oregon, because the F/V Adventurous did not have an Oregon permit during those years.[12] Petitioner's argument ultimately fails, however, because it attempts to impose a requirement that is not found in the statute.

---

[12] Petitioner also argued that Oregon's crab-pot regulation violates the requirements of subsection (b)(1) of the Dungeness Crab Act because subsection (1)(g)(F) of the rule treated "California licensed vessels fishing in the EEZ adjacent to Oregon differently than Washington vessels * * *." However, as earlier noted in footnote 6, subsection (1)(g)(F) has since been deleted from the rule. Because that provision has been deleted, petitioner concedes, and we agree, that any challenge to the rule's validity based on the existence of that provision is now moot, and, thus, we do not address that argument. *See Joint Council of Teamsters #37 v. BOLI*, 168 Or App 398, 412 n 6, 11 P3d 247, *rev den*, 331 Or 429 (2000) ("[W]here challenged rules have 'passed out of existence * * * and no one presently purports to be acting pursuant to any power originating in them,' * * * an appellate court's declaration that such rules are invalid would have no 'practical effect' on the parties' rights." (Citation omitted.)).

Petitioner essentially claims that Oregon has discriminated against his vessel because his *past* fishing in the EEZ under his Washington permit is not credited toward his Oregon permit's crab-pot allocation. By its terms, however, the Dungeness Crab Act only prohibits a state from discriminating against a vessel that *presently* "is operating" in its adjacent EEZ under the authority of an out-of-state permit. Thus, the statute does not apply to state laws that establish the crab-pot limits for a state's *own* permittees. Rather, it merely prevents the states from assigning discriminatory crab-pot allocations to out-of-state vessels permitted to operate in their adjacent EEZ waters. However, since implementation of the Tri State E-200 Agreement on January 1, 2007, Oregon-permitted vessels are the *only* ones authorized to fish for Dungeness crab in the EEZ adjacent to Oregon. Consequently, crab-pot allocations made pursuant to OAR 635-006-1015(1)(g)(E) apply only to Oregon-permitted vessels and, therefore, cannot violate the Dungeness Crab Act's discrimination prohibition because the Oregon rule simply does not impose *any* crab-pot limit on out-of-state vessels.

In essence, petitioner's argument attempts to take the Dungeness Crab Act's prohibition of discrimination against out-of-state vessels and expand it to prohibit a state from allocating crab-pot limits to its permittees in a manner that differentiates between past operation by its permittees and past operation by those fishing under permits issued by other states. Ultimately, however, petitioner's proffered application of the Dungeness Crab Act founders because it contradicts the statute's text, which prohibits discrimination only against a vessel that "is operating" under an out-of-state permit in the EEZ adjacent to the regulating state.

The legislative history behind the Dungeness Crab Act confirms that understanding. The House Report that analyzed the antidiscrimination provision that was incorporated into the bill that reauthorized and amended the Dungeness Crab Act in 1998 explains that, under the antidiscrimination provision, "the State of Washington could not allow Washington-permitted vessels to carry a certain number of crab pots, but prohibit Oregon[-] or California-permitted vessels from carrying the same number of crab pots." HR

Rep No 105-674, 105th Cong, 2d Sess (1998), 5. As that example indicates, the statute was not intended to prevent a state from regulating the number of crab pots its *own* permittees may carry. Rather, the statute is focused on preventing one state from imposing a crab-pot limit on *other* states' vessels that is more restrictive than the crab-pot limit that the state imposes on its own vessels. As discussed, OAR 635-006-1015(1)(g)(E) applies only to Oregon permittees and, therefore, does not run afoul of the Dungeness Crab Act's discrimination prohibition.

To summarize, the board did not err in interpreting OAR 635-006-1015(1)(g)(E) to require that the landings used to determine the pot limits for a crab vessel permit are the landings made by the vessel holding the permit during the qualifying period. Furthermore, that application of the rule does not violate the federal Dungeness Crab Act's prohibition of state regulations that discriminate against vessels operating in the EEZ adjacent to Oregon under the authority of another state's permit. Therefore, we conclude that the board did not err in upholding the department's assignment of a 200 crab-pot limit for Oregon Dungeness crab vessel permit 96311.

Affirmed.