1997 ME 183

John DALEY, et al.

v.

**COMMISSIONER, DEPARTMENT OF MARINE RESOURCES, STATE OF MAINE.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 24, 1997.

Decided Aug. 8, 1997.

C. Clifton Fuller, III, The Attorneys Office, P.A., Belfast, for plaintiffs.

Andrew Ketterer, Attorney General, Thomas A. Harnett, Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] John Daley, et al.[1] (Daley) appeals from the judgment entered in the Superior Court (Washington County, *Alexander, J.*) in favor of the State in an action challenging the constitutionality of the 1995 Amendments to the Maine Lobster Fisheries Act, 12 M.R.S.A. §§ 6301–6463 (1994 & Supp.1996) (the 1995 Amendments). Daley claims several errors in the ruling. We find none and affirm the judgment.

I.

[¶ 2] In 1996 Daley filed a complaint making ten claims and seeking a declaratory judgment, 14 M.R.S.A. §§ 5951–5963 (1980), that the 1995 Amendments aimed at conserving the lobster resource along the coast of Maine, P.L.1995, ch. 468 (effective March 1, 1996), were illegal and unconstitutional. The State responded with a motion to dismiss, and Daley replied with both an opposition to the State's motion and a motion for a summary judgment. After a hearing, the court entered a summary judgment in the State's favor.[2] Daley's appeal concerns four of his original ten claims.

II.

[¶ 3] When reviewing an appeal from the entry of a summary judgment we

---

1. Daley and the other plaintiffs are lobster fishermen or are family members of lobster fishermen residing for the most part in Hancock and Washington counties.

2. The court's order also states that the "State's Motion to Dismiss is GRANTED." Given the plaintiffs' motion for a summary judgment, which was accompanied by two affidavits, and the fact that the court therefore considered material outside the pleadings, we treat this appeal as having been taken from the entry of a summary judgment.

view the evidence in the light most favorable to the party against whom judgment was entered and review the trial court's decision for errors of law. *Gonzales v. Commissioner, Dept. of Public Safety,* 665 A.2d 681, 682 (Me.1995). When the record generates no issue of material fact and the moving party is entitled to a judgment as a matter of law, we affirm. *Id.* at 682–83.

### Family Member Exemption

■ [¶ 4] The 1995 Amendments set a limit of 1,200 traps per boat, with a phase-in period and exceptions for license-holders who are family members fishing from the same boat. 12 M.R.S.A. § 6431–D(2)(B) (Supp. 1996).[3] Daley argues that the exemption draws an invidious distinction between classes of Maine citizens and thereby violates the equal protection clauses of the Maine and United States Constitutions.

[¶ 5] The family member exemption to the boat trap limit implicates neither a fundamental right nor an inherently suspect classification, and therefore will survive an equal protection challenge if its different treatment of similarly situated persons bears any conceivable rational relation to a legitimate state interest. *Aseptic Packaging Council v. State,* 637 A.2d 457, 459–60 (Me.1994). The family member exemption passes this test. There is no dispute that the 1995 Amendments advance legitimate state interests in protecting the marine environment and the conservation of natural resources. *See, e.g., Maine v. Taylor,* 477 U.S. 131, 140, 106 S.Ct.

2440, 2448, 91 L.Ed.2d 110 (1986) (upholding statute prohibiting importation of out-of-state baitfish); *State v. Richardson,* 285 A.2d 842, 844–45 (Me.1972) (state may legitimately prohibit possession of lobsters on board any boat rigged for otter or beam trawling). Moreover, the provision does not draw an invidious distinction between classes of Maine citizens. The Legislature may have determined that the tradition of family-related license-holders fishing from a single boat did not pose a threat to the lobster resource, while allowing an unlimited number of unrelated license-holders to do so would have placed too much pressure on the fishing resource.[4] *See Aseptic Packaging,* 637 A.2d at 460 (in performing rational basis analysis, court may go beyond face of statute to determine whether any conceivable state of facts exists to support it).

### Federal Preemption

■ [¶ 6] Daley contends that the 1995 Amendments' per-licensee and boat trap limits, 12 M.R.S.A. §§ 6431–A(1), 6431–D(1), are preempted by the Magnuson Fishery Conservation and Management Act, 16 U.S.C.A. §§ 801–1883 (1985 & West Supp.1997), in which Congress assumed exclusive authority of fishery management within the federal "exclusive economic zone" (EEZ), an area extending 197 miles beyond Maine's three-mile maritime boundary. 16 U.S.C.A. § 1802(11). We have already decided that enactments such as the 1995 Amendments are not unconstitutional by virtue of preemption, *State v. Hayes,* 603 A.2d 869, 870–71 (Me.1992), due primarily to the Magnuson

3. The statute states in pertinent part:
 Two or more holders of [the relevant] licenses ... who harvest lobsters from the same boat may collectively tend more than 1,200 traps from that boat if the license holders:....
 B. Document ... that the license holders fished an average of more than 1,200 traps from a boat in the coastal waters of the State in [calendar years 1994 and 1995] and are family members. For the purposes of this paragraph, being "family members" means that one license holder on the boat must be related to each of the license holders on the boat as either a spouse, sibling, parent by blood, parent by adoption, child by blood, child by adoption, stepchild, stepparent, grandchild or grandparent.
 (1) When license holders qualify under this paragraph, the trap limit for the boat is the product of 1,200 multiplied by the number of license holders who are family members documented under this paragraph who continue to harvest lobsters from the boat in ... 1996 and consecutive calendar years thereafter....
 12 M.R.S.A. § 6431–D(2)(B).

4. It is not unusual for the Legislature to enact statutory exemptions to protect and foster the development of family-owned enterprises. *See* 7 M.R.S.A. § 34(1)(1989) (family farm corporation exemption from Agricultural Land Interest reporting requirements); 26 M.R.S.A. § 663(3)(J) (1988) (exempting certain family members from State minimum wage laws); 26 M.R.S.A. § 1043(11)(F)(6) (1988) (exempting certain family members from State unemployment compensation coverage).

Act's preservation of the states' authority to regulate state-registered vessels within the EEZ. 16 U.S.C.A. § 1856(a)(3).[5] Moreover, the federal lobster management plan contains no limit on the number of traps that may be fished, authorizes concurrent state jurisdiction, and expressly allows the enforcement of more restrictive state law requirements.[6]

### Regulatory Taking

 [¶ 7] The 1995 Amendments set limits of 1,200 traps per license-holder, 12 M.R.S.A. § 6431–A(1), and 1,200 traps per boat, *id.* § 6431–D(1), with seven-year phase-in periods for both. *Id.* §§ 6431–A(2), 6431–D(2)(A)(1). Daley argues that these provisions constitute regulatory takings of property in violation of both the Maine and United States Constitutions because many of the plaintiffs entered the lobstering industry long before any limitations on traps had been contemplated, and the limitations therefore interfere with their legitimate investment-backed expectations as to the continued and profitable use of their boats and other equipment. We disagree because of the application of the three factors identified by the United States Supreme Court as particularly significant to the regulatory taking analysis.[7] *See Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 224–25, 106 S.Ct. 1018, 1025–26, 89 L.Ed.2d 166 (1986) (court must inquire as to economic impact of the regulation on the claimant, extent to which the regulation has interfered with distinct investment-backed expectations, and character of the governmental action).

[¶ 8] First, there is nothing in the record which precludes the conclusion that the governmental action at issue here is permissible regulation that "adjusts the benefits and burdens of economic life to promote the common good." *Id.* at 225, 106 S.Ct. at 1026. Second, the record on this challenge presents no evidence that the Amendments will impose a severe economic burden on the industry. *Maine Beer & Wine Wholesalers v. State,* 619 A.2d 94, 99 & n. 7 (Me.1993).[8] Third,

5. At the time of the 1995 Amendments' enactment, the Magnuson Act stated in pertinent part: "[A] State may not directly or indirectly regulate any fishing vessel outside its boundaries, unless the vessel is registered under the law of that State." That language has since been strengthened by amendment. See 16 U.S.C.A. § 1856(a)(3) (West Supp.1997).

The 1995 Amendments apply to state-registered vessels, a category defined to include those vessels owned or operated by a person licensed under Maine's marine resources law. *See* 12 M.R.S.A. § 6001(36) (1994); *State v. Hayes,* 603 A.2d 869, 870–71 (Me.1992). Accordingly, any person licensed to harvest lobsters by the State of Maine operates a Maine-registered vessel for the purposes of the Magnuson Act.

6. *See, e.g.,* 50 C.F.R. § 649.3(b)(1996) ("Nothing in these regulations shall supersede more restrictive state management measures for American lobsters."), § 649.4(c) ("If a requirement of this part and a management measure required by state or local law differ, any vessel owner permitted to fish in the EEZ must comply with the more restrictive requirement."), § 649.5(c) ("If a requirement of this part and a management measure required by state or local law differ, any operator issued a permit under this part must comply with the more restrictive requirement.").

7. The State's argument to the contrary notwithstanding, Daley does not complain of a substantive due process violation and raises a regulatory taking claim only. Although, as the United States Supreme Court has noted, "it would be surprising indeed to discover" that a regulation deemed to comport with due process standards was nonetheless violative of the Takings Clause, *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 223, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986), the required analyses remain distinct. *See Concrete Pipe & Products of California v. Construction Laborers Pension Trust,* 508 U.S. 602, 636–47, 113 S.Ct. 2264, 2286–92, 124 L.Ed.2d 539 (1993) (addressing substantive due process and regulatory taking claims made as to the same regulation). Whereas a regulatory taking analysis demands inquiry into the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the governmental action, as well as whether the claimant has been singled out to bear a burden that should be borne by the public as a whole, 475 U.S. at 224–27, 106 S.Ct. at 1025–27, a substantive due process analysis focuses on the rationality of the enactment, that is, on whether the regulation at issue is in the interest of the public welfare and whether the methods used bear a rational relationship to its intended goals. 508 U.S. at 637, 113 S.Ct. at 2287; *National Hearing Aid Ctrs., Inc. v. Smith,* 376 A.2d 456, 460 (Me.1977).

8. By allowing those who have historically fished more than 1,200 traps from a single boat to do so until the year 2003, 12 M.R.S.A. §§ 6431–A(2),

Daley has not demonstrated a legitimate investment expectation in a regulatory *status quo.* *See id.* at 99; *see also Connolly,* 475 U.S. at 227, 106 S.Ct. at 1027 ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." (quotation omitted)).[9]

### Unconstitutional Vagueness and Delegation of Power

 [¶ 9] The 1995 Amendments authorize the Commissioner of the Department of Marine Resources (DMR) to impose per-tag fees to cover the costs of a tag system to identify and track traps, 12 M.R.S.A. §§ 6431–B, 6431–C, as well as the costs of establishing lobster management zones and lobster management policy councils. 12 M.R.S.A. §§ 6446, 6447. Daley contends that these provisions are void for vagueness and constitute an improper delegation of the taxation power. *See* Me. Const. art. IX, § 9 ("The Legislature shall never, in any manner, suspend or surrender the power of taxation."). These arguments are unpersuasive. There is nothing unconstitutionally vague about the provision that empowers DMR to impose a fee to defray the costs of administering its regulatory program. Moreover, because the fee is designed to pay for administrative costs and not to raise general revenue, the Legislature did not improperly delegate its power to tax to the DMR. *Board of Bar Overseers v. Lee,* 422 A.2d 998, 1004 (Me.1980), *appeal dismissed,* 450 U.S. 1036, 101 S.Ct. 1751, 68 L.Ed.2d 233 (1981) (distinguishing between a tax designed to raise revenue and license fees imposed to cover

costs of program administration pursuant to the government's police power to regulate); *Strater v. Town of York,* 541 A.2d 938, 938 (Me.1988) (same principle in context of harbor usage fee).

The entry is:

Judgment affirmed.

---

6431–D(2)(A)(1), the Amendments are tailored to avoid imposing a severe economic burden on the industry by enabling larger commercial lobster firms to gradually reduce the number of traps fished and avoid precipitous, dramatic contractions in their operations. *See Connolly,* 475 U.S. at 225–26, 106 S.Ct. at 1026–27 (finding no impermissible regulatory taking in part because of significant number of provisions that "moderate and mitigate the economic impact" of the regulation).

9. The United States Supreme Court also has indicated that "[w]here the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it de-

prives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee v. City of Escondido,* 503 U.S. 519, 522–23, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992) (cited in *Tri–State Rubbish, Inc. v. Town of New Gloucester,* 634 A.2d 1284, 1288 (Me.1993)); *Concrete Pipe,* 508 U.S. at 646–47, 113 S.Ct. at 2291–92; *Connolly,* 475 U.S. at 227–28, 106 S.Ct. at 1027–28. Daley has not shown that either the purpose of the Amendments or the extent of the burden they place on the plaintiffs suggests that they unfairly single out the lobster industry to bear a burden "which, in all fairness and justice, should be borne by the public as a whole." 475 U.S. at 227, 106 S.Ct. at 1027 (quotation omitted).