STATE OF MAINE
OXFORD, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-21-003

SETH CAREY,                          )
                                     )
        PETITIONER,                  )
                                     )
                                     )    ORDER DENYING
    v.                               )    PETITIONER'S 80B APPEAL
                                     )
TOWN OF RUMFORD,                     )
                                     )
        RESPONDENT,                  )
                                     )

Currently before the court is Petitioner Seth Carey's ("Carey") petition for "Review of Governmental Action" brought pursuant to Maine Rule of Civil Procedure ("M.R. Civ. P.") 80B and the Respondent, Town of Rumford's ("Rumford" or "Town") Motion to Dismiss the 80B Petition on procedural grounds. For the reasons set forth herein, the Town's decision is affirmed.

## FACTUAL BACKGROUND

The following facts are taken from the record. Seth T. Carey owns a property located at 455 High Street in Rumford, Maine. (Proceeding Record "PR" 3.) He obtained title to the property via quitclaim deed from the Town on May 26th, 2020. (PR 9.) On October 5th, 2020, Carey's uninsured property suffered significant damage due to a structure fire that left his residence uninhabitable. (PR 4.) Eight days later, on October 13th, Rumford's Code Enforcement Officer ("CEO") Richard Coulombe sent a letter to Carey, letting him know that he was required by town ordinance to either repair or demolish the remaining structure. (PR 4.) In the letter, the CEO requested that Carey submit a plan of correction for the property. (PR 4.) After receiving no response from Carey, the CEO sent another letter to Carey requesting, again, that Carey repair or

1

demolish the 455 High Street residence, and submit a plan of correction to the Town. (PR 4.) After again receiving no response from Carey, the CEO sent a third letter on January 20th, 2021. (PR 4.)

On February 15th, 2021, Carey responded to the CEO's communications for the first time with an email saying, in full, "I'm fixing my house." (PR 4.) The CEO responded to Carey's email requesting a written plan for the repairs and that he obtain the proper permits from the Town. (PR 4.) Carey never responded to the CEO's request, and nearly two months later, eighteen Rumford residents delivered a petition to the Town requesting "prompt action" by to "remediate a blighted and dangerous property currently abandoned at 455 High Street." (PR 4.) The CEO then sent notice to Carey notifying him that, at the April 15th, 2021 Board of Selectpersons ("Board") meeting, he would be recommending that a dangerous building hearing be held regarding Carey's dilapidated property. (PR 4-5.) The CEO did put forth such a recommendation and the Board scheduled a final hearing for May 27th, 2021. (PR 5.) Rumford Police Sergeant Tracey Higley provided Carey with notice of this hearing, in hand, on May 18th, 2021. (PR 51.)

At the hearing, there were over twenty documents admitted as evidence, and testimony was heard from four individuals. (PR 1-2.) One of those individuals, Rumford's fire chief, testified that he classified Carey's residence as a 100% loss once he viewed the premises after the fire was extinguished. (PR 4.) The chief's opinion was premised upon his thirty years of experience fighting and investigating fires and the extensive structural damage to the building, which included: charred joists and subfloor, structural damage to the roof including two holes for fire ventilation, the complete loss of the staircase which rose from the basement to the first floor, the partial loss of the staircase which rose from the first to the second floor, and damage to the

2

property's plumbing, electrical and heating systems. (PR 5.) The CEO also testified at the hearing and determined that, in his professional opinion, the structure was an 80% loss. (PR 5.)

At the hearing, Carey testified in his favor and also called his neighbor and selectman Frank DiConzo to testify on his behalf.[1] (PR 1.) In support of his contention that his structurally damaged residence was not a dangerous building, Carey also submitted a quote from a local contractor which stated he could fully restore the residence for $13,945.00. (PR 90.)

At the close of the hearing, in a 3-0 vote, the Board found that Carey's property located at 455 High Street "was severely compromised" by the October 5th fire, and has joists "that are charred and structurally unsound." (PR 6.) The Board also found that the Structure's electrical and plumbing systems were unserviceable, that the roof is structurally compromised, that the structure constitutes a hazard and danger, and that "the property is not fit for human habitation and is not salvageable." (PR 6.)

In an order dated June 3rd, 2021, the Board, pursuant to 17 M.R.S. § 2851, ordered Carey "to abate the dangerous condition and nuisance by demo[lishing] the building" and to "dispos[e] of the demolition materials properly within 30 days of the service of this order." (PR 6.) Carey was served with notice of this order on June 8th, 2021, and the order was recorded in the Oxford County registry of deeds. (PR 8.)

On June 30th, 2021, Carey filed the instant 80B petition in Oxford County Superior Court requesting review of the Board's decision.[2] On August 31st, 2021, Rumford filed its reply to the Plaintiff's 80B petition and filed an accompanying Motion to Dismiss. On September 17th, 2021,

---

[1] DiConzo abstained from the final vote. (PR 7.)

[2] In his 80B Petition, Carey asks the court to "schedule a trial on the facts." In order to properly make this request, Carey was required to file a Motion pursuant to M.R. Civ. P. 80B(d). He did not file such a motion, and the court therefore, decides his Petition on the record before it. Pursuant M.R. Civ. P. 80B(l), the court decides it is not necessary to hear oral argument in this matter and chooses to decide the case on brief. *See* M.R. Civ. P. 80B(l); *Lindemann v. Comm'n on Governmental Ethics & Election Pracs.*, 2008 ME 187, ¶¶ 23-26, 961 A.2d 538.

Carey filed his reply to both.[3] Carey's 80B petition, now fully briefed, awaits this court's decision.

## DISCUSSION

### I. MOTION TO DISMISS

Along with their 80B reply brief, Rumford moved to dismiss Carey's Petition due to Carey's failure to comply with Rule 80B's procedural requirements which include a filing of a record of the proceedings either prior to or at the same time as the filing of the Petition, and consultation among the parties as to the contents of the record. *See* M.R. Civ. P. 80B(e). The Court acknowledges that the Petitioner violated Rule 80B(e). The Town, however, submitted a record and the court relies on that record. The court declines to exercise its discretion pursuant to M.R. Civ. P. 80B(h) to dismiss the petition in this instance. Accordingly, Rumford's Motion to Dismiss Carey's 80B Petition is denied.

### II. 80B PETITION

Carey's 80B Petition asserts a number of claims seeking to overturn the Board's decision. Some appear to be brought as part of the 80B Petition and others appear to be brought as independent claims. For clarity's sake, the court notes that, to the extent that Carey sought to raise any independent claims in his filing, he failed to request a conference pursuant to M.R. Civ. P. 80B(i). As such, the court recognizes no independent claims and treats all claims asserted by Carey to be part of his 80B Petition currently ripe for decision. *See supra*, nn. 3-4.

---

[3] In Carey's response to Rumford's reply, he asserts that Rumford's demolishing of the fire damaged structure at 455 High Street would constitute spoliation of evidence because it would destroy evidence that could be relevant or helpful in another lawsuit Carey has brought against the Town of Rumford and the Rumford Fire Department. The court does not consider the merits of Carey's spoliation claims here and suggests that the appropriate forum for raising such claims, if they had any merit, is the Petitioner's other lawsuit.

In his Petition, Carey first seeks relief from the Board's decision through direct review of the Board's classification of his home as a dangerous building. Carey also alleges that his procedural and substantive due process rights were violated by the Board's decision, and that the Board's decision was an unconstitutional "taking" under the 5th Amendment to the United States Constitution and Article I Section XXI of the Maine Constitution. Carey also requests an injunction, enjoining Rumford from demolishing the residence at 455 High Street. The court addresses each of Carey's grounds for relief in turn.

## A. Board Decision and Findings

First, Carey alleges that the Board's decision to find his residence a "dangerous building" and order its removal was improper. The Court reviews Board decisions for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶8, 746 A.2d 368. Judicial review of a government agency's decision shall be limited to "the record of the proceedings before the governmental agency." M.R. Civ. P. 80B(f)

"When reviewing administrative findings of fact, [the court] examines the entire record to determine whether, on the basis of all the testimony and the exhibits before it, the [Board] could fairly and reasonably find the facts as it did." *Town of Kittery v. Dineen*, 2017 ME 53, ¶ 25, 157 A.3d 788 (quoting *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 26, 153 A.3d 768). The court must affirm findings of fact if they are supported by any component evidence in the record, even if evidence contrary to the result reached by the agency exists. *Dineen*, 2017 ME 53, ¶ 25, 157 A.3d 788. "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient to support a conclusion." *Id.* (quoting *Osprey Family Tr. v. Town of Owls*

*Head*, 2016 ME 89, ¶ 2, 141 A.3d 1114). The Court may not substitute its judgment for that of the Board. *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶6, 868 A.2d 230.

In the instant case, the decision which Carey appeals is the determination by the Board that his residence, located at 455 High St., is a dangerous building within the meaning of 17 M.R.S. § 2851. Section 2851 provides that "municipal officers in the case of a municipality may, after notice . . . and hearing adjudge a building to be a nuisance or dangerous . . . and may make and record an order . . . prescribing what disposal must be made of that building." *Id.*

A building is adjudged to be a nuisance or dangerous if "it is structurally unsafe, unstable or unsanitary; constitutes a fire hazard; is unsuitable or improper for the use or occupancy to which it is put; constitutes a hazard to health or safety because of inadequate maintenance, dilapidation, obsolescence or abandonment; or is otherwise dangerous to life or property." 17 M.R.S. § 2851(2-A).

In support of his request for reversal, Carey contends first, that the Board made their decision based on the testimony of "unqualified witnesses" that "offered up casual opinions of fact." He claims that neither Rumford's CEO nor Fire Chief—the two witnesses called by the Town at the Board meeting—had "any engineering training or education," did "no testing to back up or qualify their opinions that the home is dangerous," and "cherry-picked unflattering photos of the fire damage." Second, Carey asserts that the Board "refused to give any credence to the only actual credible and legitimate witness, builder Jeremy Vashaw of Somerset Property maintenance, who did a thorough inspection and submitted a detailed report and estimate to fix the damage to the property." This court's review of the record does not support any of Carey's claims of error.

*1. Witness Qualifications and Photos*

6

Carey's first attack on the Board's decision is that the Board's reliance on the CEO and Fire Chief's testimony was an error because they lacked the appropriate qualifications to offer their opinion on the structure. Despite Carey's assertions, the record reflects that the witnesses had sufficient qualification. Chief Reid had over thirty years of experience investigating and fighting fires and had inspected over 100 fire damaged structures. CEO Coulombe's testimony was based on his experience as a CEO and his experience as a firefighter. Given these qualifications, the court finds that the Board did not err in treating their opinion as credible. *See Dineen*, 2017 ME 53, ¶ 26, 157 A.3d 788 (holding that an experienced CEO and fire chief's testimony as to the conditions of a structure were sufficient to support a town council's finding the structure was a "dangerous building.")

Carey's next assignment of error is that the Town discriminatorily selected photos of the fire damage to support their position that the building was dangerous. While the record does nbotcontain evidence to evaluate this specific accusation, the record does contain the photos that the Board relied on. All thirty four photos of the structure which the Board considered could certainly support a conclusion that the structure was dangerous, structurally unsafe and uninhabitable, and unsuitable for the use or occupancy to which it is put. The photos depict a structure with broken and boarded windows, significant charring as a result of the fire, dilapidated walls, holes in the roof, and a severely damaged interior. Thus, the Court does not find the Board's reliance on these photos to be an error and finds them sufficient to support the Board's conclusion.

*2. Estimate*

Lastly, Carey argues that the Town erred in failing to give credence to the estimate he submitted as evidence. The estimate stated that the cost of fixing and repairing the property

would be about $14,000. The record reflects that the Board did consider the estimate in making its determination, and although it may be evidence which supports a contrary conclusion, the Board's ultimate decision is supported by other competent evidence in the record. Accordingly, it was not reversible error for the Board to give the estimate little weight in its findings.

### 3. Conclusion

Carey's request for reversal of the Board's decision to classify his residence as dangerous, not fit for human habitation, and not salvageable is denied. The Board's findings were supported by substantial evidence in the record, and were not an error of law or an abuse of discretion.

### B. Constitutional Claims

Carey next asserts three separate constitutional challenges to the Board's decision. First, he alleges that the decision violated his procedural due process rights. Second, he alleges the decision violated his substantive due process rights, and third, he alleges that the decision constituted an unconstitutional taking in violation of the fifth amendment to the United States Constitution and article I, section XXI of the Maine Constitution.

### 1. Procedural Due Process

Procedural Due Process "imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the Due Process Clause of the Fifth or Fourteenth amendments. *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). The court analyzes procedural due process claims by utilizing a two-step inquiry: first, the court determines whether the government action has deprived the claimant of a protected property interest, and second, if such a deprivation occurred, the court must determine what process is due pursuant to the Fourteenth Amendment. *McNaughton v. Kelsey*, 1997 ME 182, ¶ 6, 698 A.2d 1049. Procedural

due process requires no particular form of procedure but does require an opportunity to be heard. *Bank of America N.A. v. Camirie*, 2017 ME 20, ¶ 8, 155 A.3d 416.

From the time that the property at 455 High Street was deeded to Carey via quitclaim deed, on May 26th, 2020, Carey has owned a property interest in the parcel and any structures thereon. Accordingly, the Board's decision to classify the property as a dangerous building and order it demolished did affect a property interest for the purposes of a due process analysis.

The question then becomes whether the process afforded to Carey in this instance was adequate. Section 2851 provides that a building may only be adjudged as dangerous and ordered abated after "notice . . . and hearing." 17 M.R.S. § 2851. The court now considers whether these procedures, as implemented by the Town of Rumford here, erroneously deprived Carey of his interest.

### a. Notice

Carey asserts he did not receive notice of the hearing until midnight before the date of the hearing, however, the record shows that Carey was served in hand with notice of the dangerous building hearing on May 18th, 2021, by Rumford Police Sergeant Tracey Higley.

When the adequacy of notice is at issue, the operative inquiry is whether the notice was reasonably calculated to give the respondent notice of the pendency of the proceeding. *Gaeth v. Deacon*, 2009 ME 9, ¶ 23, 964 A.2d 621. Adequate notice is provided when the notice, at a minimum, is sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests. *C.f. Ford Motor Credit Corp. v. Thompson Mach.*, No. CV-91-674, 1995 Me. Super. LEXIS 259, at * 4 (July 21, 1995).

Before the hearing, Carey received three letters from the CEO requesting that he repair his residence, a letter stating that the CEO would be requesting a dangerous building hearing, and notice of the hearing itself, nine days prior to its occurrence. Carey was sufficiently on notice

9

of the pendency of the dangerous building proceeding and had ample time to take appropriate steps to protect his interests. He had time to secure witnesses, prepare evidence, or seek a continuance of the hearing if he felt it was needed. Therefore, the court finds no procedural due process violation on notice grounds.

### b. Hearing

Next, the court considers whether the hearing conducted by the Board on May 27th, 2021, afforded Carey adequate process. At hearing, Carey had the opportunity to present his own evidence contradicting the Town's claims that the structure on his property was dangerous. He chose to call one witness, testify on his own behalf, and submit one piece of documentary evidence. Carey had ample opportunity to be heard. Accordingly, the court finds no due process violation based on the hearing either.

### 2. Substantive Due Process

Carey's second constitutional claim is that the Board's decision to classify his house as a dangerous building was a violation of his substantive due process rights.

The Supreme Court has held generally that "the touchstone of [substantive] due process is protection of the individual against arbitrary action of government." *LeGrand v. York Cnty. Judge of Probate*, 2017 ME 167, ¶ 12, 168 A.3d 783, 794 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). A person's right to substantive due process is violated when the government engages in "conduct that shocks the conscience and violates the decencies of civilized conduct." *LeGrand*, 2017 ME 167, ¶ 12, 168 A.3d 783. "[C]onduct intended to injure in some way unjustifiable by any government interest" would likely support a substantive due process claim." *Id.*

Throughout each of his Pleadings, Carey maintains that the Board's decision to classify his property as "dangerous" and order it demolished, was motivated by the bias of the Board's

10

members and other town officials. The court takes these accusations seriously and agrees that if Rumford officials utilized the Section 2851 process to settle a personal vendetta against Carey, then Carey's substantive due process challenge may have some merit.

However, except for conclusory assertions made by Carey in his pleadings, the record supports no such malintent. As discussed *supra* at 6, the Board's decision to hold a Section 2851 hearing was well supported. The building had been sitting dilapidated for nearly eight months at the time of the hearing, and a collection of residents who live in the neighborhood surrounding the building petitioned the Town to take action. Rumford's decision to hold a dangerous building hearing and its ultimate finding that the building was indeed dangerous, did not "shock the conscience or violate the decencies of civilized conduct." Accordingly, Petitioner cannot obtain relief from the Board's decision on this basis.

*3. Unconstitutional Taking*

Carey's final constitutional challenge is that the decision to classify his home as a "dangerous building" and order its demolition was an unconstitutional taking. [4]

The 5th amendment to the United States Constitution prohibits government actors from taking private property for public use without providing "just compensation" to property owners. Article 1 § XXI of Maine's Constitution prohibits the same.

Although Carey, in his various filings, likens Section 2851's procedure to that of an eminent domain proceeding, the applicable analysis is whether the ordered abatement of his

---

[4] Although Carey originally brought his "taking" claim in the form of an independent declaratory judgment action, the court agrees with Rumford that such an action is unnecessary. *See Maine Cent. R.R. Co. v. Town of Dexter*, 588 A.2d 289, 292 (Me. 1991) ("[T]he Superior Court should not, through a request for declaratory judgment, grant a collateral review on the merits of the administrative determination unless direct judicial review, as provided by statute, is inadequate to prevent irreparable injury"). The court believes that Carey's constitutional takings claim can appropriately be decided as part of his 80B petition. 5 M.R.S. § 11007(4)(C)(1); *see e.g. Pine Tree Tel. & Tel. Co. v. Town of Gray*, 631 A.2d 55, 57 (Me. 1993). Although there may be times that additional evidence is necessary to determine whether government action constitutes a taking or that a taking may constitute an independent claim, the Petitioner waived those opportunities by failing to comply with Rule 80B(d),(f).

home is a regulatory taking. *See Horne v. Dept. of Agriculture*, 576 U.S. 350, 360 (2015) (Noting that a *regulatory taking* occurs when *governmental regulations* go "too far" in limiting the use of private property.)

"It would be surprising to indeed discover" that a statute deemed to comport with due process standards was nonetheless violative of the Takings Clause. *Daley v. Commissioner, Dep't of Marine Resources*, 1997 ME 183, n.7, 698 A.2d 1053 (quoting *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 223 (1986)). Regardless, regulatory taking and due process analyses remain distinct. *Daley*, 1997 ME 183, n.7, 698 A.2d 1053 (citing *Concrete Pipe & Products of California v. Construction Laborers Pension Trust*, 508 U.S. 602, 636-47 (1993)).

Whether action pursuant to statute constitutes a regulatory taking involves an analysis of three factors set out by the Supreme Court in *Connolly* and cited by the Law Court in *Daley*. Those three factors are (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation interferes with the distinct, investment backed expectations of the claimant; and (3) the character of the governmental action. *Daley*, 1997 ME 183, ¶ 7, 698 A.2d 1053. "A property owner fails to prove a categorical federal or state takings claim if he or she fails to show that the governmental action has rendered the property substantially useless and stripped of all practical value." *MC Assocs. v. Town of Cape Elizabeth*, 773 A.2d 439, 443 (Me. 2001).

None of the factors in a regulatory taking analysis fall in Carey's favor here. First, the record offers little evidence as to the severity of the economic impact that the Board's decision will have on Carey. At hearing, Carey offered no evidence as to the diminution in value his property will face after the home is abated, as to the cost of abatement and subsequent removal, or as to the cost of rebuilding on that same parcel. Second, the record presents no testimony or documentary evidence purporting to show Carey's investment backed expectations either at the

12

time he purchased the property or after the fire. And lastly, as discussed *supra* at 11, the character of the Town's actions in this instance do not indicate any sort of conduct intending to harm Carey.

Accordingly, Carey's final constitutional claim does not offer Carey relief from the Board's decision either. Such a decision was not a taking and therefore did not violate Carey's 5th amendment entitlement to compensation.

## C. Preliminary Injunction

Finally, Carey seeks relief from the Board's order in the form of a permanent injunction preventing Rumford, pursuant to the language of its order, from undertaking the abatement of Carey's home at municipal expense and subsequently seeking to recover expenses associated with the demolition.

A party seeking a preliminary injunction, must show that: (1) the party would suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm that granting injunctive relief would inflict on the party opposing the injunction; (3) the public interest will not be adversely affected by granting the injunction; *and* (4) the plaintiff succeeds on the merits. *Windham Land Tr. v. Jeffords*, 2009 ME 29 ¶ 8, 967 A.2d 690(citing *Fitzpatrick v. Town of Falmouth*, 2005 ME 97, ¶ 18, 879 A.2d 21)(emphasis added). Failure to demonstrate that any one of the elements for injunctive relief are met, requires that injunctive relief be denied. *Town of Charleston v. Sch. Admin. Dist. No. 68*, 2002 ME 95, ¶¶ 6–7, 798 A.2d 1102.

Here, Carey has not shown success on the merits. This court has affirmed the Board's findings and denied each one of Carey's constitutional challenges to their decision and order. Since Carey does not succeed on the merits, his request for injunctive relief is denied.

## CONCLUSION

13

For the foregoing reasons, Petitioner's 80B Appeal of the Board's decision to classify his home as a dangerous building and Rumford's Motion to Dismiss Petitioner's 80B action are denied. The Board's decision was not made in error, an abuse of discretion, or unsupported by substantial evidence in the record. Additionally, Carey's procedural and substantive due process rights were not violated, nor was his fifth amendment entitlement to just compensation for the taking of private property.

**Entry is:**

Respondent's Motion to Dismiss the 80B Petition is DENIED.

The decision of the Rumford Board of Selectpersons is affirmed.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 11/17/24

_____
Thomas R. McKeon,
Justice, Superior Court